**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| TERESA J. OWENS, | ) | CASE NO. 3:20-CV-01737-JJH |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, Teresa Owens ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On July 10, 2017, Claimant filed applications for DIB and SSI, alleging a disability onset date of February 12, 2012 and claiming she was disabled due to chronic back pain, high blood pressure, and pancreatitis. (ECF No. 13, PageID #: 104, 300). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 13, PageID #: 245). On April 26, 2019, an ALJ held a hearing, during

1

which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No.

13, PageID #: 121). On May 10, 2019, the ALJ issued a written decision finding Claimant was not

disabled. (ECF No. 13, PageID #: 93). The ALJ's decision became final on June 4, 2020, when

the Appeals Council declined further review. (ECF No. 13, PageID #: 84).

On August 6, 2020, Claimant filed her Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 16, 17).

Claimant asserts the following assignment of error:

> The ALJ failed to properly evaluate the opinions provided by the consultative
> examiner in accord[] with 20 C.F.R. § 404.1520c.

(ECF No. 14 at 2).

## III. Background

### A.  Relevant Medical Evidence

The ALJ summarized Claimant's health records and symptoms:

> [O]n February 12, 2012, the record reflects that the claimant [went]
> to the Lima Memorial Hospital following an assault while working.
> (Ex. 1F, p. 37). Upon examination, the claimant reported that she
> was pushed by a customer, and indicated lower back injuries. During
> the examination, she was noted to have some tenderness and muscle
> spasms over the lower back region, as well as some limitations in
> range of motion. (*Id.*, p. 37). However, diagnostic x-rays of the
> lumbar spine were essentially benign, with no evidence of acute
> fractures, disc bulges, or osseous abnormalities. (*Id.*, p. 38 and 52).
> She was then recommended to rest for two days, ice the back
> intermittently, and avoid operation of heavy machinery while taking
> medications. The claimant was also recommended to abstain from
> bending and heavy lifting for a few days. (*Id.*, p. 38). The claimant
> was not placed on long-term restrictions because of her injuries and
> apparently returned to work on light duty restrictions. (*Id.*, p. 87).
>
> Although the claimant's treatment notes show that she required only
> conservative treatment measures for her symptoms of lower back
> pains, records from March 2012 show that she was enrolled in
> physical therapy. (Ex. 1F, p. 71). A review of the records from
> physical therapy services show that the claimant reported increases

in lower back pains with movement and indicate that she had positive straight leg raises bilaterally. (*Id*., p. 71). She was then assessed with an L5 strain and was recommended to continue on medications, apply heat and ice, and stretch periodically. (*Id*., p. 72). She was also recommended to rest and was given a work excuse "until recheck" in March 2012. (*Id*., p. 74). However, the treatment notes show that she was not placed on any lifting restrictions or even recommended to avoid any postural activities. (*Id*., p. 73). The undersigned notes that claimant's work restrictions were modified in April 2012 to allow for occasional lifting and carrying 4-6 pounds, no bending or twisting occasional over-the-shoulder reaching, occasional pushing and pulling, frequent standing and walking, and continuous sitting. (*Id*., p. 83). The claimant's work restrictions were continued in May 2012. (*Id.,* p. 85).

Then, on May 6, 2012, the record reflects that the claimant was referred by her employer to the office of E. Gregory Fisher, M.D., for a short-term disability evaluation. (Ex. 1F, p. 86). Following a physical examination and clinical interview, Dr. Fisher noted that the claimant reported lower back pains throughout the examination, but had no obvious evidence of muscle weakness over the lower extremities. Additionally, Dr. Fisher noted that the claimant had no evidence of muscle spasms or guarding over the lower back, despite her complaints of soreness and pain. Furthermore, Dr. Fisher noted that she had no evidence of tenderness over the SI joints, buttocks, or posterior thighs bilaterally. Dr. Fisher also noted that she had negative straight leg raises bilaterally, normal sensations in the lower extremities, normal motor strength, normal deep tendon reflexes, and that she could laterally bend 10 degrees. (*Id*., p. 87-88). Moreover, Dr. Fisher found that the claimant had negative Lasegue tests bilaterally, and negative Fabere and Patrick tests bilaterally. (*Id*., p. 88). As such, Dr. Fisher diagnosed the claimant with a work related lumbosacral strain/sprain. (*Id*.). She was then recommended to continue on conservative therapy measures, including physical therapy and pharmaceutical management of her symptoms of pain. (*Id*., p. 90). Her work restrictions were also continued unchanged and continued through July 2012. (*Id*., p. 92). The undersigned notes that her progress reports from June 2012 show that she was still working despite her complaints of pain. (*Id*., at 93). The claimant was also referred for chiropractic treatments in June 2012, with recommendations for adjustments three times per week. (*Id*., p. 97 and 109).

Although the claimant's progress reports show that she continued to complain of chronic lower back and neck pains, medical records from August 23, 2012, show that she was still working albeit with

3

restrictions that remained largely unchanged. (Ex. 1F, p. 120 and 129). Furthermore, medical records from Lima Memorial Hospital show that when she was referred for an MRI scan of the lumbar spine, she was found to have no evidence of an acute disc protrusion despite some circumferential disc bulging at L4-5 and L5-S1 that caused facet arthrosis, ligametum flavum redundancy without spinal canal stenosis, and no more than mild biforaminal stenosis without nerve root impingement. (Ex. 3F, p. 40). However, the MRI scans did reveal that she had moderate right neural foraminal stenosis at L5-S1 with some impingement on the S1 nerve root. (*Id*., p. 30). For treatment, she was continued in physical and massage therapy services, was prescribed a TENS unit, and was continued in pain management services. (*Id*., p. 38-39).

…

[T]he claimant continued to receive treatment at the Lima Memorial Hospital Occupational Health Services on an outpatient basis. (Ex. 3F). Although her progress reports show that she continued to report lower back pains that radiated into the lower extremities, the treatment notes also show that she continued to receive only conservative therapies, such as medication management and massage therapy. (Id., p. 54). Furthermore, progress reports through September 2015 show that she received little more than routine medication refills and periodic symptom monitoring. (Ex. 2F and 3F). The undersigned also notes that in March 2015, when the claimant was re-evaluated as part of her Workers' Compensation claim, she was found to have grossly stable symptoms that had not progressed from previous evaluations. (Ex. 3F, p. 81).

Then, in July 2015, the record reflects that the claimant was re-assessed with arthritis in the lower back, along with sciatica, for which she was referred for physical therapy. (Ex. 6F, p. 26). For treatment, she was continued on pain medications and was referred for additional physical therapy services due to reported difficulties with prolonged sitting, standing, and walking. (*Id.*, p. 26). However, the physical therapy records show that she had only mild symptoms of weakness in the lower extremities and had no limitations at all in the bilateral upper extremities. (*Id*., p. 27). Moreover, a review of progress reports through 2017 show that she remained ambulatory, able to do a full range of housework despite her limitations, sleep adequately, and not even received or recommended for back surgery or injections. (Ex. 14F, p. 13). Her treatment notes from December 2017 also show that upon physical examination, she maintained 5/5 motor strength in the bilateral upper and lower extremities despite some residual pains and mild reductions in her range of motion. (*Id*.,

p. 15-16). She was then re-assessed with chronic pain syndrome, sacroiliac join inflammation, spondylosis of the lumbar region without myelopathy or radiculopathy, and with spinal stenosis of the lumber region without neurogenic claudication (*Id*., p. 17). For treatment, she was recommended for bilateral SI joint injections and was placed on Tramadol for pain. (*Id*., p. 17). Follow up treatment notes from the St. Rita's Mercy Medical Center show that she received the SI joint injections and medial branch blocks at L3-4, L4-5, and L5-S1 on May 10, 2018. (Ex. 21F, p. 61).

Although the claimant's progress reports through September 2018 show that she has continued to report symptoms of lower back pains that radiate into the bilateral lower extremities, her medical records show that she appreciated some benefit from the ongoing use of narcotic pain medications and medical branch blocks. (Ex. 18F-21F). Furthermore, medical records from July 2018 show that when she was given a physical examination, she was found to have 5/5 motor strength in the lower extremities, a full range of motion and function in the bilateral upper extremities, and grossly normal sensations despite her complaints of pain. (*Id*., p. 69). Additionally, medical records from August 2018 show that she reported no more than moderate symptoms of pain with the continued use of maintenance medications. (Ex. 20F, p. 56). The treatment notes also show that the claimant has not been referred for surgical intervention for her symptoms of lower back pains.

(ECF No. 13, PageID #: 105–07).

## B. Opinion Evidence at Issue

### 1. Consultative Physician — Babatunde Onamusi, M.D.

The ALJ summarized Dr. Onamusi's opinion:

[O]n September 11, 2017, Babatunde Onamusi, M.D., an independent consultative physician, evaluated the claimant at the request of the Social Security Administration. Following a clinical interview and physical examination, Dr. Onamusi diagnosed the claimant with a history of chronic neck and low back pain. Based upon his evaluation of the claimant, Dr. Onamusi stated that the claimant appeared to be significantly limited by pain behavior. Furthermore, Dr. Onamusi stated that the claimant appeared to be functionally limited based on performance during this examination, and indicated that functionally it was his opinion that she would be capable of sitting, standing, or walking occasionally and lifting occasionally no more than 10 pounds. Continuing, Dr. Onamusi

> stated that she did not come in with an assistive device and indicated
> that she was able to walk without any assistive device. However, Dr.
> Onamusi stated that she would have difficulty bending, squatting,
> and lifting more than 5 pounds. Dr. Onamusi then went on to state
> that she should be able to use the upper extremities occasionally for
> gross and fine motor tasks. (Ex. 10F).

(ECF No. 13, PageID #: 108–09). The ALJ found this opinion "partially persuasive," concluding:

> In making this finding, the undersigned notes that Dr. Onamusi is
> not a treating physician and only evaluated the claimant on one
> occasion prior to offering his opinion. Furthermore, the undersigned
> notes that Dr. Onamusi's opinion appears to rely heavily upon the
> claimant's subjective responses to questions regarding symptoms of
> pain, as opposed to objective findings that show she maintains 30-
> 40 pounds of grip strength, is able to squat, walk on heels and toes,
> and exhibited no evidence of paracervical tenderness. However, the
> opinion of Dr. Onamusi is consistent with the medical records from
> the Lima Wellness Center and the Lima Memorial Hospital, which
> show that the claimant has a history of treatment for chronic pain
> syndrome, lower back and neck pains.

(ECF No. 13, (PageID #: 108).

### 2. State Agency Consultants — Timothy Budnik, D.O. and Sreenivas Venkatachala, M.D.

Dr. Budnik reviewed Claimant's medical evidence and opined that Claimant "retained the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently, and sit, stand or walk for 6 hours out of an 8-hour workday." (ECF No. 13, PageID #: 109). He also stated that Claimant "could push and pull within the limitations for lifting and carrying; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; balance without limitations; and frequently stoop, kneel, crouch, and crawl." (ECF No. 13, PageID #: 109). Dr. Venkatachala also reviewed Claimant's medical evidence and "generally concurred" with Dr. Budnik's opinion, "adding only that [Claimant] should never climb ladders, ropes, or scaffolds." (ECF No. 13, PageID #: 109).

6

The ALJ found both opinions "persuasive." (ECF No. 13, PageID #: 110). He noted that both physicians reviewed the comprehensive medical records and their opinions "are consistent with the treatment notes from the Lima Wellness Center and Mercy Health Partners, which show that the claimant has been treated for chronic pain, but remains ambulatory and able to care for herself independently." (ECF No. 13, PageID #: 110).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching and crawling; occasional use of the bilateral lower extremities for operation of foot controls; and frequent use of the bilateral upper extremities for reaching, handling, and fingering. The claimant must avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights.

(ECF No. 13, PageID #: 104). The ALJ reasoned:

> [T]he claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. In making this finding, undersigned has considered the totality of the record to determine the intensity, persistence, and limiting effects of the claimant's impairments. This includes an evaluation of the claimant's activities of daily living; the location, duration frequency, and intensity of pain or other symptoms' factors that precipitate or aggravate symptoms; the type, dosage, effectiveness, and side effects of any medications; treatment, other than medication, that the claimant has received for symptoms; and any other measures that the claimant has used to relieve pain or other symptoms. . . . Specifically, the undersigned notes that since her original injury, the claimant has returned to work at SGA levels and has continued to work regularly despite her complaints of persistent and residual pains. Furthermore, a review of her radio graphs show that she has no evidence of acute disc bulges and her treatment notes show that she has not been recommended for surgery. Additionally, a review of medical records

from the Lima Memorial Hospital, the St. Rita's Medical Center, and the Lima Wellness Center show that her symptoms are well managed with conservative treatment measures, such as pain management, massage, and physical therapy.

(ECF No. 13, PageID #: 110).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the

claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises one issue on appeal. Claimant suggests that the "ALJ improperly discredited the opinions provided by the only examining physician of record resulting in an inaccurate residual functional capacity." (ECF No. 14 at 7).

#### 1. Weight of medical opinions[1]

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844

---

[1] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

(Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a).  Nevertheless, an ALJ must "articulate how he considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

Claimant argues that the ALJ failed to discuss the supportability of Dr. Onamusi's opinion, falling short of the procedural requirements. She asserts that Dr. Onamusi's opinions were supported by objective evidence because he personally examined Claimant and "then completed a detailed narrative report documenting his findings." (ECF No. 14 at 9). Because the ALJ found Dr. Onamusi's opinion consistent with the record, Claimant contends that, had the ALJ discussed supportability, he could not have found Dr. Onamusi's opinion only "partially persuasive." The Claimant would then have been considered disabled because Dr. Onamusi limited Claimant to sedentary work and Claimant turned 50 prior to the ALJ's decision. As such, the ALJ would have to find Claimant disabled. *See* 20 C.F.R. 404, Subpt. P, app. 2, R. 201.12. Commissioner, on the other hand, argues that the ALJ did discuss the supportability of Dr. Onamusi's opinion by stating

10

that it relied heavily on Plaintiff's subjective responses. Commissioner also asserts that the ALJ's

opinion is supported by substantial evidence.

Supportability considers the kind of evidence used to support an examiner's opinion. "The

more relevant the objective medical evidence and supporting explanations presented by a medical

source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions

. . . will be." 20 C.F.R. § 404.1520c(c)(1). When discussing the persuasiveness of Dr. Obamusi's

opinion, the ALJ specifically stated:

> [T]he undersigned notes that Dr. Onamusi's opinion appears to rely
> heavily upon the claimant's subjective responses to questions
> regarding symptoms of pain, as opposed to objective findings that
> show she maintains 30-40 pounds of grip strength, is able to squat,
> walk on heels and toes, and exhibited no evidence of paracervical
> tenderness.

(ECF No. 13, PageID #: 108). While the ALJ did not use the term "supportability" in his

evaluation, it is clear that the ALJ's finding that Dr. Onamusi's opinion was based heavily on

Claimant's subjective complaints is a finding that the opinion lacked the support of objective

evidence. *See Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL 2841707, at *9 (N.D.

Ohio Feb. 3, 2020) ("[I]nherent in the ALJ's finding that Dr. Wagner's opinion appeared to be

based largely on Kearn's subjective complaints is a finding that the opinion lacked the support of

objective record evidence."); *Dultmeyer v. Comm'r of Soc. Sec.*, No. 3:12 CV 2941, 2014 WL

991900, at *4 (N.D. Ohio Mar. 13, 2014) ("That the ALJ failed to expressly couch her analysis of

the Zepf Center records in "supportability" terms does not detract from the clear import of the

ALJ's discussion — the ALJ discounted the Zepf Center records because they were based on the

self-reporting of a patient . . . ."). Throughout his opinion, the ALJ noted inconsistencies between

Claimant's subjective complaints and the objective medical evidence. The ALJ was entitled to

discredit Dr. Onamusi's opinion for relying on such complaints as long as he explained his

finding—which he specifically did. As such, the ALJ satisfied his requirement of discussing the supportability of Dr. Onamusi's opinion.

Moreover, the Court's own review of Dr. Onamusi's opinion shows that it was largely based on Claimant's subjective expressions of pain. (ECF No. 13, PageID #: 1131). He stated she "appeared to be functionally limited based on performance during this examination." (ECF No. 13, PageID #: 1131). But also noted that "[m]y physical exam was significantly limited by pain behavior." (ECF No. 13, PageID #: 1131). Claimant states that "Dr. Onamusi noted objective findings such as decreased range of motion due to pain." (ECF No. 14 at 9). However, this was again based on Claimant's expressions of pain, which the ALJ specifically discounted. Dr. Onamusi did not discuss his findings that Claimant had grip strength of 30 pounds in the right hand and 40 pounds in the left or that she was able to reach forward, push and pull with the upper extremities, and tie knots, do buttons and shoelaces, and pick up coins. (ECF No. 13, PageID #: 1131). As such, the Claimant is unable to point to any reversible error. The Court, therefore, finds that the ALJ's discussion of the supportability factor satisfied CFR § 404.1520c and was supported by substantial evidence. *See Harris v. Comm'r of Soc. Sec.*, 2:20 cv 4356, 2021 WL 3615721, at *8 (S.D. Ohio Aug. 16, 2021) (affirming the ALJ's decision where "the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements of §§ 404.1520c and 416.920c" and "the ALJ's supportability and consistency analysis was supported by substantial evidence").

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 15, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).